USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _3-16-18_

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

**RAMON PERALTA,**

                    **Plaintiff,**

-against-

**DULCY PERALTA AND CABANILLAS & ASSOCIATES**

                    **Defendants.**

---

**16-cv-8890 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Before this Court are motions to dismiss by Defendant Cabanillas & Associates, P.C. ("Cabanillas") and Dulcy Peralta ("Ms. Peralta"). For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

### I.    Factual Background

The following allegations are taken from Plaintiff's amended complaint and are considered true for the purposes of a motion to dismiss.

Plaintiff Ramon Peralta ("Plaintiff") and Defendant Dulcy Peralta ("Ms. Peralta") met in the Dominican Republic around 1999. Amended Complaint ¶ 1 (ECF No. 43) ("Am. Compl."). At that time, Ms. Peralta worked as a secretary to Plaintiff's first wife, Georgina Ramona Marte. *Id.*

During this period, Plaintiff's relationship with Ms. Marte was undergoing numerous pressures. *Id.* ¶ 2. Plaintiff was aware of those pressures, and also knew that Plaintiff was a U.S.

1

citizen and had "relative wealth" as "compared to Ms. Peralta's then impoverished financial condition." *Id.* ¶ 3.

According to the complaint, Ms. Peralta hatched a plan to exploit Plaintiff, marry him, and secure residency in the United States. *Id.* ¶ 3. As part of this plan, Ms. Peralta falsely informed Plaintiff that Ms. Marte had divorced him in the Dominican Republic. *Id.* ¶ 5. She supported this claim by providing a fraudulent divorce certificate from a Dominican Republic court. *Id.* ¶ 6-7. Next, Ms. Peralta falsely informed Plaintiff that he was the father of her unborn child. *Id.* ¶ 8.

Based on his understanding that Ms. Marte had divorced him, and that Ms. Peralta was bearing his child, Plaintiff secured a Fiancé visa for Ms. Peralta. *Id.* ¶¶ 10-12. Ms. Peralta arrived in the United States around 2002. *Id.* ¶ 14. Ms. Peralta and Plaintiff married in 2003. *Id.* Unbeknownst to him, Plaintiff was still legally married to Ms. Marte. *Id.* ¶ 15.

Following his marriage to Ms. Peralta, Plaintiff helped Ms. Peralta and her family in a variety of ways. He helped Ms. Peralta secure a green card and other immigration benefits, *id.* ¶ 17, provided emotional and financial support to Ms. Peralta's son, *id.* ¶ 19, refinanced his home in Jamaica, Queens to name Ms. Peralta on the deed as his wife, *id.* ¶ 20, and sponsored Ms. Peralta's daughters, Yanelis Hernandez and Jennifer Hernandez, in their applications for permanent residence in the United States. *Id.* ¶ 22.

The week following Yanelis and Jennifers' arrival in the United States in 2009, Ms. Peralta filed domestic violence charges against Plaintiff. *Id.* ¶ 23-26. Plaintiff contends that such charges were false, and that Plaintiff concocted these allegations in order to secure fast-track citizenship as a domestic violence victim, seize ownership of the Queens home, and improve her position in her anticipated divorce action against Plaintiff. *Id.* ¶ 27. Yanelis and

Jennifer, along with John Doe—Ms. Peralta's alleged lover—supported the domestic violence allegations. *Id.* ¶ 26. Additionally, either Ms. Peralta or John Doe inflicted bruises on her body to support the charges. *Id.* ¶ 25.

As the result of these allegations, Plaintiff was arrested and spent several nights in jail. *Id.* ¶ 28. During this time, John Doe moved into the Queens home with Ms. Peralta. *Id.* ¶ 30. As the criminal charges were pending, Ms. Marte and Plaintiff began communicating again, after years of losing contact. *Id.* ¶ 32. At this point, they discovered that they had been deceived by Ms. Peralta into believing that the other individual initiated the divorce. *Id.* ¶ 33-35. Plaintiff hired a lawyer to investigate, and that lawyer discovered that the divorce document presented to Plaintiff by Ms. Peralta was fraudulent. *Id.* ¶¶ 35-39.

Ultimately, Plaintiff accepted an Adjournment in Contemplation of Dismissal ("ACD") on the domestic violence charges. *Id.* ¶ 40-41. The ACD restored Plaintiff to possession of his home and he informed Ms. Peralta that she had ten days to vacate. *Id.* ¶ 41.

Plaintiff and Ms. Peralta thereafter divorced. As part of the divorce, Plaintiff was ordered to pay child support. *Id.* ¶ 42.

After paying child support for a period of time, Plaintiff ordered a DNA test. The test revealed he was not the child's father. *Id.* ¶ 43. At this point, Plaintiff informed Ms. Peralta that he was aware that he was not the child's father and that the divorce decree was fraudulent. *Id.* ¶ 43. In response, Ms. Peralta stated she would no longer seek child support and in fact returned Plaintiff's subsequent child support payments. *Id.* ¶ 44.

Plaintiff and Ms. Peralta had no further contact for "many years." *Id.* ¶ 45. At some point, a foreclosure was initiated against the Jamaica, Queens home. *Id.* ¶ 46.[1] Ms. Peralta hired a law firm, Defendant Cabanillas, to defend her in the action. *Id.* ¶ 46. Ms. Peralta attended a foreclosure proceeding along with Dulcy Cespedes (Ms. Peralta's mother) and several other "John Does." *Id.* ¶ 47. According to the complaint, Defendants' goals were to secure ownership of the home even though they knew any right was based on fraudulent representations. *Id.* ¶ 49.

During the foreclosure conference, Plaintiff's lawyer informed Ms. Peralta's attorney about Ms. Peralta's various fraudulent actions. *Id.* ¶ 50. After the conference, Plaintiff's attorney called another one of Ms. Peralta's attorneys to inform the attorney about such fraud. *Id.* ¶ 51.

At some point, Ms. Peralta brought suit in Bronx Family Court to hold Plaintiff in contempt for willful failure to pay child support. *Id.* ¶ 53.[2] Cabanillas again represented Ms. Peralta in this proceeding. On the first court date, Plaintiff's attorney informed another one of Ms. Peralta's lawyers about her alleged fraud and showed him a copy of the fraudulent divorce decree. *Id.* ¶¶ 53-54. Ms. Peralta testified at the hearing and obtained a money judgment against Plaintiff. *Id.* ¶ 56.

The complaint further alleges that Cabanillas is involved in fraudulent legal practices. According to the complaint, the practice of law in New York's outer boroughs has "deteriorated" into something akin to "an episode of the 'Sopranos.'" *Id.* ¶ 58. New York attorneys receive

---

[1] The amended complaint does not specify when the foreclosure proceeding occurred. According to Defendant Cabinallas, court records reveal that the conferences were held on July 11, September 13, and November 16, 2016. Memorandum of Law in Support of Cabanillas Motion to Dismiss at 10 n.4 (ECF No. 49) ("Cabanillas Mem").
[2] The amended complaint does not specify when these proceedings occurred. Defendant Cabanillas states that court records reveal that Ms. Peralta filed the petition on September 22, 2016. Cabanillas Mem at 10 n.5; ECF No. 48-2 (Support Order).

money from non-lawyer outside entities that determine what cases they take and some "cross the line," becoming "willing participants in the frauds and crimes of their clients." *Id.* ¶¶ 60-61.

Specifically, Plaintiff alleges that Christopher Cabanillas was likely involved in fraudulent activities. *Id.* ¶ 62-64. This is because Cabanillas began an "expensive round the clock radio campaign," which was likely funded from "other sources (who may not be lawyers)" and which requires him to "take any possible case (regardless of the ethical, or other, consequences), such as the case of Ms. Peralta, in order to ensure that his financiers are paid." *Id.* ¶¶ 63-64.

## II.    Procedural Background

Plaintiff initiated this action against Cabanillas, Dulcy Cespedes, Jane and John Doe, Jennifer Hernandez, Yanelis Hernandez, and Dulcy Peralta on November 16, 2016. (ECF No. 1.) Plaintiff filed an amended complaint on June 30, 2017. (ECF No. 43) ("Am. Compl.").

On July 20, 2017, Cabanillas filed a motion to dismiss. (ECF Nos. 47-49) ("Cabanillas Mem"). Plaintiff responded in opposition on August 25, 2017. (ECF Nos. 56-58) ("Pl Cabanillas Mem"). Cabanillas filed a reply brief on August 29, 2017. (ECF No. 58) ("Cabanillas Reply Mem").

On September 6, 2017, Plaintiff voluntarily dismissed defendants Dulcy Cespedes, Jennifer Hernandez, and Yanelis Hernandez. (ECF No. 62.)

On September 29, 2017, Ms. Peralta filed a motion to dismiss. (ECF No. 64) ("Peralta Mem"). Plaintiff filed his opposition on October 24, 2017. (ECF No. 66) ("Pl Peralta Mem"). Ms. Peralta filed her reply brief on November 9, 2017. (ECF No. 67) ("Peralta Reply Mem").

Accordingly, the Court considers this matter fully submitted.

## LEGAL STANDARD

Rule 12(b)(6) allows the Court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In addition to the pleading requirements of Rule 8, where a plaintiff alleges fraud as a predicate act of RICO, he must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b), described *infra*. *See First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (collecting cases).

# DISCUSSION

## I.  Consideration of Factual Assertions in Plaintiff's Memoranda of Law

Plaintiff's Memoranda of Law contain numerous factual allegations based on Plaintiff counsel's personal knowledge.  *See, e.g.*, Pl Cabanillas Mem at 2-3 (discussing counsel's personal experience drafting prenuptual agreements in other cases); 5-6 (discussing counsel's experience with the Oil for Food Program); 8-9 (discussing the Enron scandal); Pl Peralta Mem at 16 (attesting to personal knowledge of Plaintiff's marriage).  Defendants contend that such allegations should be stricken because (1) such assertions belong in an affidavit, not a memorandum of law, and (2) in any case, affidavits are inappropriate at the motion to dismiss stage.

S.D.N.Y. Local Rule 7.1 provides that a memorandum of law should "set[] forth the cases and other authorities relied upon in support of the motion," whereas "any factual information" should be contained in "[s]upporting affidavits and exhibits."  Thus, Plaintiff counsel's factual allegations belong in a supporting affidavit.  Even if such allegations had been included in an affidavit, affidavits are generally inappropriate for consideration in a motion to dismiss.  *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.) (internal citations

and quotation marks omitted); *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (declining to consider affidavit at motion to dismiss stage).

Regardless, this Court's opinion would not differ if it considered Plaintiff counsel's statements.

## II.   Subject Matter Jurisdiction

Defendant Cabanillas argues that this Court either lacks jurisdiction, or should abstain from exercising jurisdiction, over this matter under the domestic relations exception. Plaintiff relies on a Yale Law Journal article to assert that the domestic relations exception does not apply to cases that arise under Federal Question jurisdiction.

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). The "domestic relations exception" to a federal court's jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). While this "exception is very narrow, a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Schottel v. Kutyba*, No. 06-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (internal citation and quotation marks omitted). Courts in this Circuit have also exercised discretion to "abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long a full and fair adjudication is available in state courts." *Tait v. Powell*, 241 F. Supp. 3d 372, 376 (E.D.N.Y. 2017) (collecting cases).

Here, the domestic relations exception does not deprive this Court of jurisdiction. To be sure, the allegations are closely related to marriage and child support disputes. However, those disputes have already been resolved in state court. Further, Plaintiff also brings non-domestic

claims, such as allegations that Defendants fraudulently secured citizenship and ownership of the Jamaica, Queens home. Moreover, Plaintiff is solely seeking monetary relief. Accordingly, this Court has jurisdiction to entertain this matter, and will not abstain from exercising jurisdiction.

## III.    RICO Claims

To establish a RICO claim, "a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).

In order to establish standing under the RICO statute, a plaintiff must plead, at a minimum, "'(1) the defendant's violation of [the RICO statute], (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)). The third factor "is satisfied if the defendant's injurious conduct is both the factual and proximate cause of the injury alleged." *Id.* at 120 (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).

This Circuit has clarified that "lack of RICO standing does not divest the district court of jurisdiction over the action, because RICO standing, unlike other standing doctrines, is sufficiently intertwined with the merits." *Id.* at 116-17. Accordingly, this Circuit has counseled

that, "if the standing issue may be resolved on proximate cause grounds," the question of standing 'need not be reached." *Id.* at 122.

### A. Statute of Limitations

"Civil RICO claims are subject to a four-year statute of limitations." *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (collecting cases). The period begins to run "upon the discovery of the injury." *Id.* at 150; *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("discovery of the injury, not discovery of the other elements of a claim, is what starts the clock"). Accordingly, the first step is to determine "when the plaintiff sustained the alleged injury." *Koch*, 699 F.3d at 150. The court "then determines when the plaintiff 'discovered or should have discovered the injury.'" *Id.*

Here, Plaintiff discovered Ms. Peralta's fraudulent actions by at least 2009, when Ms. Mate informed him that the divorce certificate was fraudulent, he hired an investigator, and that investigator produced evidence that the divorce certificate was indeed fraudulent. *See* Am. Compl. ¶¶ 33-39. The judgment ordering Plaintiff to pay child support was entered on April 23, 2011. *See* Order Continuing An Order of Support by Default (ECF No. 39-2). Plaintiff did not file this complaint until 2016. Accordingly, even if Plaintiff alleges that the injury did not arise until he was obligated to pay child support in 2011, he still did not file his claim within four years of the injury's accrual.

Plaintiff appears to concede that the statute of limitations would bar his claims, but argues that this Court should apply principles of equitable tolling. "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir.

1990)).  Generally, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F. 3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F. 3d 347, 352 (2d Cir. 2015)).  Moreover, "it is not enough for a party to show that he *experienced* extraordinary circumstances. He must further demonstrate that those circumstances *caused* him to miss the original filing deadline." *Id.* (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)) (emphasis added in *Watson*).

Here, Plaintiff summarily states that he was suffering from "what can only be described as some sort of Post Traumatic Stress Disorder." Pl Peralta Mem at 20.  Plaintiff does not provide any documentation of his alleged post-traumatic stress disorder ("PTSD") nor explain how his alleged PTSD prevented him from filing in a timely manner.  This allegation is insufficient to constitute extraordinary circumstances. *See Tuitt v. Martuscello*, No. 12-1003, 2013 WL 5508486, at *3 (S.D.N.Y. Oct. 3, 2013) (equitable tolling unwarranted where "documentation Petitioner submitted established neither that he suffered from PTSD for the entire period he sought to toll, nor that the PTSD prevented him from timely filing").

Accordingly, the statute of limitations bars Plaintiff's claims.  In any case, for the reasons set forth below even if his claims were not barred, Plaintiff fails to state a claim under RICO.

## B.  RICO Enterprise

Under RICO, an enterprise includes "'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984)).  An "association-in-fact enterprise" must have at least three structural features: "a

purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 941 (2009). Importantly, the individuals must be "associated together for a common purpose of engaging in a course of conduct." *First Capital Asset Management, Inc.*, 385 F.3d at 173. Additionally, the "entity" must be distinct from the "person" who violates the statute. *Crux v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).

Here, Plaintiff alleges that Ms. Peralta served as the "ringleader" of an enterprise consisting of "all Defendants" whose purpose was to trick Plaintiff into entering a fraudulent marriage, separating from his wife, and financially supporting a child that was not his; incarcerate him upon his failure to pay child support; seize control of his home; make him an unwilling accomplice in various state and federal crimes; and engage in "other predicate acts." Am. Compl. ¶¶ 67, 70.

These allegations are insufficient to demonstrate an enterprise. First, beyond a conclusory assertion that Plaintiff was the "ringleader," the complaint provides no factual allegations about the relationships of each defendant within the alleged enterprise. *See Continental Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11-7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ("failure to plead with any specificity . . . the mechanics of the alleged ongoing working relationship among defendants is fatal").

Second, Plaintiff does not allege that Ms. Peralta's daughters, mother, or Cabanillas shared—or even knew of—her alleged purpose. The amended complaint only mentions Ms. Peralta's mother once, in relation to attending a foreclosure hearing. Am. Compl. ¶¶ 47-48. Her children are only mentioned twice, with respect to their arrival in the United States and corroboration of her domestic violence claims. *Id.* ¶¶ 22; 26. And the amended complaint only

alleges that Cabanillas represented Ms. Peralta in two legal proceedings that occurred after the underlying alleged fraud. *Id.* ¶¶ 46; 52. These allegations are insufficient to show Defendants acted with a common purpose. *See BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (dismissing RICO claim that did not mention "the roles each Defendant played and the actions they took" because the court had no "information from which it could be concluded that Defendants function as a unit or that they shared a common purpose").

### C. Pattern of Racketeering Activity

To state a claim under RICO, "the plaintiff must plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).

The "continuity requirement" can be satisfied by showing either a "closed-ended" or "open-ended" pattern. *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). In an open-ended pattern, the plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id.* at 185. This threat is "generally presumed when the enterprise's business is primarily or inherently unlawful." *Id.* Yet even if the predicate acts are "serious," a "discrete and relatively short-lived scheme to defraud a handful of victims' [] is insufficient to establish open-ended continuity." *Id.* at 186 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999)).

To satisfy closed-ended continuity, the plaintiff must allege "a series of related predicate acts extending over a substantial period of time." *Cofacredit, S.A.*, 187 F.3d at 242 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)). A closed-ended scheme generally must span more than two years. *First Asset Capital Management, Inc.*, 385 F.3d at

181. However, the temporal period is "insufficient, without more, to support a finding of a closed-ended pattern." *Id.* Other factors include "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes." *Id.* The aim is to ensure that the plaintiff "is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Estate of Andy Warhol*, 119 F.3d at 98.

Here, Plaintiff alleges that Defendants committed acts involving mail fraud, wire fraud, unlawful procurement of citizenship or naturalization, money laundering, and, separately, perjury and subordination of perjury, attempted grand larceny, grand larceny, and scheme to defraud. Am. Compl. ¶ 73. Plaintiff further alleges that the Defendants pose a continuing threat. *Id.* ¶ 74. Thus, Plaintiff appears to allege both a closed and open conspiracy.

Plaintiff does not sufficiently allege a pattern of predicate activity.

### i. Mail and Wire Fraud

To state a claim for mail or wire fraud, a plaintiff must allege: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 168 (E.D.N.Y. 2010) (quoting *Chanayil v. Gulati*, 169 F.3d 168, 170-71 (2d Cir. 1999)).

Fraud claims must also meet "the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Management, Inc.*, 385 F.3d at 178 (collecting cases). "In essence, Rule 9(b) places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." *Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160, 171 (2d Cir. 2015). As to the first, "the complaint must '(1) detail the statements (or omissions) that

14

the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Id.* (quoting *Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). As to the second, mental states "may be pleaded 'generally,'" but a plaintiff must still "allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner*, 459 F.3d at 290-91).

Fraud-based RICO claims are subject to heightened scrutiny because "virtually every ordinary fraud is carried out in some form by means of mail or wire communication[,]" and such claims thus have "the potential [to transform] garden-variety common law actions into federal cases." *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009). Accordingly, "courts in this Circuit have held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity[.]" *Id.* at 494 (collecting cases).

Here, the amended complaint alleges that Defendants schemed to trick Plaintiff into marrying Ms. Peralta based on a fraudulent representation that his first wife divorced him and that he was the father of her child; securing U.S. citizenship for Ms. Peralta and her children; and obtaining ownership of the Jamaica, Queens home; as well as schemed to incarcerate Plaintiff for failure to pay child support. As part of this plot, Ms. Peralta placed an interstate call to Plaintiff and sent interstate mail from the Dominican Republic to the United States. Am. Compl. ¶¶ 7, 11.

Defendants argue that Plaintiff's allegations are facially implausible under *Twombly* and *Iqbal*, let alone the heightened 9(b) standard.

At this early pleading stage, these allegations state a claim for mail and wire fraud as to Ms. Peralta. However, the complaint does not allege any specific fraudulent acts committed by the other alleged members of the purported enterprise, as required under Rule 9(b). *See Gross,* 628 F. Supp. 2d at 495 (rejecting fraud-based RICO claim where complaint did not allege role played by each defendant).

Additionally, Cabanillas' legal representation is not a basis for liability. Courts in this Circuit have made clear that litigation-related activities cannot form the basis of RICO predicate acts. *Curtis & Associates, P.C.*, 758 F. Supp. 2d at 171 (collecting cases). Further, breaches of ethical violations alone cannot serve as the basis for civil liability. *See Piven v. Harwood Feffer LLP*, No. 14-6601, 2015 WL 1267423, at *2 n. 13 (collecting cases).

### ii. Unlawful Procurement of Citizenship or Naturalization

To state a claim for unlawful procurement of citizenship or naturalization, a plaintiff must allege that an individual, who is not entitled to naturalization or citizenship, knowingly "issues, procures, or obtains or applies" or otherwise attempts to do so. 18 U.S.C. § 1425(b). This Circuit has construed the "knowledge" requirement to require "proof of the defendant's

knowledge that he was not entitled to citizenship." *United States v. Alameh*, 341 F.3d 167, 175 (2d Cir. 2003).

Here, at this early pleading stage Plaintiff states a claim as to Ms. Peralta. However, for the same reasons stated above, Plaintiff has not stated a claim as to the other defendants.

### iii. Money Laundering

In order to state a claim for money laundering, Plaintiff must show that defendants "(1) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction, (3) which in fact involved the proceeds of specified unlawful activity, (4) either with (a) the intent to promote the carrying on of specified unlawful activity or (b) the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." *United States v. Hassan*, 578 F.3d 108, 127 (2d Cir. 2008).

Plaintiff appears to allege that Cabanillas engaged in money laundering. His sole allegation on this point is that "[a]t some point, certain attorneys cross the line" and participate in "the money laundering schemes of their financiers." Am. Compl. ¶ 61. This conclusory and general assertion is woefully insufficient to state a claim that Cabanillas engaged in money laundering.

### iv. Perjury and Subordination of Perjury

Perjury prohibits a person from "willfully . . . stat[ing] . . . any material matter which he does not believe to be true." 18 U.S.C. § 1621. Such statement must be made either under "oath before a competent tribunal, officer, or person" or in a "declaration, certificate, verification, or

statement under penalty of perjury." *Id.* Someone suborns perjury by "procur[ing] another to commit any perjury." 18 U.S.C. § 1622.

Plaintiff appears to allege that Ms. Peralta and her daughters committed perjury by bringing false domestic violence allegations against him. *See* Am. Compl. ¶ 27. Plaintiff fails to state a claim because (1) he does not allege that the statements were made under oath or in a document made under penalty of perjury, and (2) he provides only conclusory allegations that the allegation was false.

To the extent Plaintiff alleges that Cabanillas suborned perjury through representing Ms. Peralta, as discussed *supra* its legal representation cannot form the basis of a predicate act.

### v. Attempted Grand Larceny and Grand Larceny in the First and Second Degrees

To state a claim for grand larceny in the first degree, the plaintiff must show that the defendant "[stole] property and [] the value of the property exceeds one million dollars." N.Y. Penal Law § 155.42. With respect to grand larceny in the second degree, the plaintiff must allege that the value of the property "exceeds fifty thousand dollars" or, regardless of its value, the property is "obtained by extortion committed by instilling in the victim a fear" of physical injury, damage, or use or abuse of his position as a public servant. N.Y. Penal Law § 155.40. To show attempted grand larceny, the plaintiff must show that, "with intent to commit [grand larceny], [defendant] engage[d] in conduct which tend[ed] to effect the commission" of grand larceny. N.Y. Penal Law § 110.0.

It is unclear who Plaintiff alleges committed grand larceny or attempted grand larceny. The complaint provides no factual basis for such claims. To the extent Plaintiff alleges that

Cabanillas engaged in such acts, the complaint's conclusory allegations about misconduct in the legal field in New York's outer boroughs are insufficient to state a claim.

### vi. Scheme to Defraud

New York's scheme to defraud statute "was derived from and patterned after the Federal mail fraud statute." *People v. Taylor*, 304 A.D. 2d 435 (N.Y. 1st Dep't 2003). To show someone is guilty of a scheme to defraud in the second degree, a plaintiff must adduce evidence showing "a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons." N.Y. Penal Law § 190.60.

Here, Plaintiff has not shown that any defendant sought to defraud more than one person. Plaintiff is the only mentioned victim. Accordingly, Plaintiff has failed to state a claim.

Regardless of whether Plaintiff has stated a claim for any predicate act, he fails to satisfy the continuity requirement. Plaintiff does not sufficiently allege an open conspiracy because "a single, conclusory statement, uncorroborated by any alleged facts" is "insufficient to allege an open-ended pattern of racketeering activity." *Continental Petroleum Corp.*, 2012 WL 1231775, at * 7; *see* Am. Compl. ¶ 74; *accord FD Property Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 371 (E.D.N.Y. 2002) (collecting cases). Moreover, the nature of the act—a scheme to obtain U.S. citizenship—does not imply a threat of ongoing activity; at the time this complaint was filed, Defendants' alleged objective had already been completed.

Plaintiff also does not allege a closed conspiracy. Essentially, Plaintiff's complaint amounts to an allegation that one individual (Ms. Peralta) schemed to defraud one victim (Plaintiff) for a limited time period. Since these allegations relate only to a narrow scheme

targeted at one victim with a limited goal, they are insufficient to state a pattern under RICO. *See Gross*, 628 F. Supp. 2d at 494; *FD Property Holding, Inc.*, 206 F. Supp. 2d at 372-73 (collecting cases).

### D. Injury

To state a claim under RICO, the plaintiff must allege that the "injury to plaintiffs' 'business or property . . . was by reason of the substantive RICO violation." *Sykes v. Mel S. Harris and Associates, LLC*, 780 F.3d 70, 91 (2d Cir. 2015) (quoting *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 117 (2d Cir. 2013)). To establish causation, the plaintiff must (1) "show that the RICO violation was the proximate cause of his injury, meaning 'there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct' and (2) "the RICO violation was the but-for (or transactional) cause of is injury, meaning that but for the RICO violation, he would not have been injured." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 132 (2d Cir. 2010) (internal citations omitted). Moreover, "a predicate act cannot be deemed to have proximately caused a plaintiff's injury, even if it was an integral part of the underlying criminal scheme, unless the plaintiff's original loss could not have occurred without the commission of the predicate act." *Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y. 2005). Finally, the allegation of damages must be "clear and definite." *Am. Medical Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 444 (S.D.N.Y. 2008).

Here, Plaintiff provides no factual allegations as to how Defendants' actions injured his business or property. Further, he provides no analysis of how Defendants' actions directly or proximately caused any such injury. Plaintiff's sole allegation regarding injury is that he suffered "injury to their business or property" and that the predicate acts alleged in the complaint "were the proximate cause of such injury and/or damages." Am. Compl. ¶ 76. This amounts to a

mere recitation of the legal standard, which is insufficient to state a claim. *See RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009) (quoting *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998)) (Plaintiff's claim constitutes a "recitation of the applicable legal standard 'without any relevant supporting facts' and, accordingly, 'is insufficient to state a cause of action.'"). Moreover, to the extent Plaintiff is alleging injuries related to child support expenses or foreclosure proceedings, such injuries are too attenuated to satisfy proximate cause, as they may have occurred without Defendants' fraudulent acts. *See Leung*, 387 F. Supp. 2d at 122. Finally, Plaintiff's conclusory allegation that his damages are in excess of $1 million, Am. Compl. at 12, is not sufficiently "clear nor definitive." *See Am. Medical Ass'n*, 588 F. Supp. 2d at 441 (Plaintiffs' claims of "hundreds of million dollars or more" in damages is "neither clear nor definitive").

Accordingly, Plaintiff has failed to state a claim for RICO violations.

## IV.    RICO Conspiracy Claim

To show a RICO conspiracy, a plaintiff must allege that the defendant "'intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [she has adopted] the goal of furthering or facilitating the criminal endeavor.'" *First Capital Asset Management, Inc.*, 385 F.3d at 178 (quoting *Baisch v.*

*Gallina*, 346 F.3d at 376-77 (2d Cir. 2003)). A RICO conspiracy claim must be dismissed if Plaintiff "did not adequately allege a substantive violation of RICO." *Id.* at 182.

Here, since Plaintiff did not adequately allege a substantive violation of RICO, his conspiracy claim also fails.

## V.  State Law Claims

This Court's subject matter jurisdiction arises from federal question jurisdiction under 28 U.S.C. § 1331 and the RICO statute under 18 U.S.C. § 1961, 1962, and 1964. *See* Am. Compl. at 1. Since this Court has dismissed Plaintiff's federal law claims, it must next consider whether it is appropriate to exercise supplemental jurisdiction over the remaining state law claims.[3]

Under 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Claims "form a part of the same case or controversy" if they "derive from a common nucleus of operative fact." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). Here, Plaintiff's state law and RICO claims arise from a common nucleus of operative facts regarding the alleged scheme to defraud Plaintiff.

"The exercise of supplemental jurisdiction is left to the discretion of the district court." *First Capital Asset Management, Inc.*, 385 F.3d at 182. A court balances "several factors, including considerations of judicial economy, convenience, and fairness to litigants." *Id.* at 183 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)). When "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

---

[3] Plaintiff alleges state law claims for fraudulent misrepresentation and civil conspiracy to defraud, commit grand larceny, perjury, and subordination of perjury. *See* Am. Compl.

jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, this Court has dismissed the federal claims well before trial. Accordingly, this Court exercises its discretion, in the interests of judicial economy, convenience, and fairness, to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Zohar CDO 2003-1 Ltd. V. Patriarch Partners, LLC.*, No. 17-307, 2017 WL 6628609, at *14-15 (S.D.N.Y. Dec. 29, 2017) (declining to exercise supplemental jurisdiction over state law claims after dismissing RICO claims at motion to dismiss stage).

Accordingly, Defendants' motion to dismiss is GRANTED and this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Clerk of Court is kindly requested to terminate the motions at ECF Nos. 47 and 56.

**SO ORDERED.**

**Dated:** March 16, 2018

   **New York, New York**

          **ANDREW L. CARTER, JR.**

          **United States District Judge**